**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF LOUISIANA**

**SHREVEPORT DIVISION**

| | |
|---|---|
| **LONNIE B. SIMON, JR.** | **CIVIL ACTION NO. 08-1032-P** |
| **VERSUS** | **JUDGE HICKS** |
| **LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

**REPORT AND RECOMMENDATION**

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

**STATEMENT OF CLAIM**

Before the Court is a civil rights complaint filed in forma pauperis by pro se plaintiff Lonnie B. Simon, Jr. ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this Court on July 14, 2008. Plaintiff is currently incarcerated at the Avoyelles Correctional Center, but he alleges his civil rights were violated by prison officials while incarcerated at the Forcht Wade Correctional Center ("FWCC") in Keithville, Louisiana. He names the Louisiana Department of Public Safety and Corrections, James M. LeBlanc, Wayne Millus, Michael Venitia, Dr. Gehrig, W. Colt Palmer, Sharon Anthony, Col. Toliver, Col. Salvage, Cpt. Graves, Nurse Jane Doe, Sgt. Ward, and the Forcht Wade Correctional Center Medical Staff as defendants.

Plaintiff was incarcerated at FWCC from March 24, 2008 until April 28, 2008. He claims he was transferred to FWCC in order to have knee replacement surgery at LSU Medical Center. Plaintiff claims his personal doctor and the doctors at LSU Hospital Orthopedic Group in Pineville, Louisiana, diagnosed his need for knee replacement surgery in March 2007 and February 2008.

Plaintiff claims that at FWCC intake on March 24, 2008, he was screened by Nurse Turner. He claims she reviewed his paperwork and was aware of his pre-existing conditions. Plaintiff claims his main medical complaints were his right knee and leg. He claims he was on medications for blood pressure issues and leg spasms. He claims his left ankle, lower back, and right tibia were fractured in accidents in 1995 and 2001 prior to his incarceration. He claims that as a result of these accidents, he has problems with his left ankle, fibula, lower back, and pelvic area. He claims he had surgery to piece his knee and leg back together. He claims he also has tendon, muscle and nerve damage and bone loss. Plaintiff claims that for years, his personal doctors have treated him for his multiple conditions which also include chronic pain and high blood pressure. Plaintiff claims that every three to four years, he had to wear a brace for support and pain control. He claims he also used a cane to help with walking, pain, and balance problems.

Plaintiff claims Dr. Gehrig discontinued his pain and muscle spasm medications. He claims he was told to buy over the counter medication from the prison sick call. He claims Dr. Gehrig also lowered the dosage of his blood pressure medication from three times a day

to two times a day. He claims that as a result, his blood pressure was elevated. He also claims Dr. Gehrig failed to monitor his blood pressure. Plaintiff claims the medication Dr. Gehrig prescribed for him caused stomach problems and bleeding.

Plaintiff claims he was denied a cane, knee brace, and medication. He claims he needed these things so that he could walk without pain and difficulty. He admits that he lost his knee brace prior to his incarceration at FWCC and that only the doctors at LSU Medical Center could prescribe another one for him.

Plaintiff claims that from the evening of March 25, 2008 until March 28, 2008, Nurse Anthony and Nurse Jane Doe denied him blood pressure medications in order to torture him and to retaliate against him. He claims they had a personal vendetta against him and were negligent. He also claims he could have had a stroke because he was denied his medications. He claims the medical staff forged pill call sheets to indicate that he had received his medication. He also claims that in order to inflict pain and torture upon him, the medical staff denied him a bottom bunk status even though he had metal in both legs. Plaintiff admits that in March 2008, Col. Toliver gave him a bottom bunk. He claims the medical staff failed to follow the treatment plan prescribed by his previous doctor.

Plaintiff claims he complained to the medical staff that his legs were swollen, he was dizzy and nauseous, and in severe pain. He claims Dr. Gehrig and Nurse Sharon Anthony were furious and failed to follow-up with his appointment and examination at the LSU Orthopedic Surgery Clinic. He claims that because of their denial for treatment at LSU

Medical Center, he had swelling in both legs and severe pain. He claims he was not prescribed any medications or treatment for his condition. He claims Dr. Gehrig and Nurse Anthony had a personal vendetta against him. Plaintiff claims the medical staff told him he had an appointment scheduled at LSU Medical Center, but that he was never transported to one while at FWCC. He claims that as a result, he still suffers severe pain, nerve damage, and mental anguish.

Plaintiff claims that on April 18, 2008, Lt. Kitchell told him he had to have a bottom bunk because his legs were too swollen to climb up to a top bunk. He claims Lt. Kitchell showed Nurse Anthony his swollen legs, discoloration, and muscle spasm. He claims she denied him medication or any other relief for his conditions. He claims Nurse Anthony had him placed in segregation. He admits the guard gave him a bottom bunk.

Plaintiff claims that on April 21, 2008, he made another sick call because he was denied a bottom bunk. He claims Nurse Anthony ignored his condition and x-rays and denied him a bottom bunk. Plaintiff claims he was given a disciplinary write up for malingering and was placed in administrative segregation. He claims he was found guilty as charged and sentenced to 120 days loss of good time. His disciplinary board appeal was denied on June 25, 2008. Plaintiff admits that his prison disciplinary conviction and sentence have not been reviewed by the state courts.

Plaintiff claims FWCC medical staff failed to provide adequate medical treatment pursuant to the Americans with Disabilities Act. Plaintiff admits that he was seen by the

medical staff at FWCC between March 25, 2008 and April 22, 2008.

Accordingly, Plaintiff seeks monetary damages, restoration of 120 days good time credit, and Defendants disbarred from their duties.

**LAW AND ANALYSIS**

**Inadequate Medical Care**

Plaintiff claims he was denied adequate medical treatment for his right knee and leg and blood pressure problems. Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96 S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a

culpable state of mind.  See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84

In this case, after a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs.  To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff.  It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs.  Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997);  Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

Plaintiff suffers pain as a result of trauma and surgery that occurred many years prior to his incarceration.  Plaintiff admits that he was screened by the medical staff when he was transferred to FWCC.  Plaintiff further admits he was seen by medical personnel on several occasions while incarcerated at FWCC.  Plaintiff's complaints were not ignored.  To the contrary, it appears Plaintiff was examined and treated by the FWCC medical staff and was prescribed blood pressure medication and allowed to purchase over the counter medication for his pain and discomfort.  Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton."

Plaintiff disagrees with the diagnosis and treatment plan that Defendants provided him while he was incarcerated at FWCC for approximately one month. He claims he should have been provided with knee replacement surgery and a knee brace, a cane, and ice packs. He further claims he should have been given a duty status that required he be given a bottom bunk. He claims he should have been provided a higher dosage of blood pressure medication, leg spasm medication, and prescription pain medications.

Plaintiff also alleges he was denied blood pressure medication for three days after he arrived at FWCC. He claims the medical staff forged the pill call sheets to show that he was receiving his medication. Plaintiff alleges the medical staff had a vendetta against him and as a result tortured him and retaliated against him. However, Plaintiff gives no basis for the alleged vendetta which he claims existed upon his arrival at FWCC.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not

constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's claim should be dismissed with prejudice as frivolous.

**Habeas Claim**

Plaintiff alleges that his disciplinary sentence is unlawful and seeks restoration of his good time credits. Although Plaintiff submitted his claim on the standardized civil rights complaint form, it is incumbent upon this Court to determine preliminarily whether the facts alleged establish a claim under 42 U.S.C. § 1983 of the Civil Rights Act, or whether the claim is one which must be pursued initially in a habeas corpus proceeding. This determination is made by focusing on "the scope of relief actually sought." Alexander v. Ware, 417 F.2d 416, 419 (5th Cir. 1983); Serio v. Members of the La. State Bd. of Pardons, 821 F.2d 1112, 1117 (5th Cir. 1987).

When a claimant challenges the very fact or duration of his physical confinement and seeks an immediate release or speedier release from confinement as relief, he must pursue his claim through an application for writ of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827 (1973). In accordance with this guideline, the United States Court of Appeals for the Fifth Circuit adopted a "per se rule barring consideration of claims under [42 U.S.C.] § 1983 that directly or indirectly challenge the constitutionality of the state conviction or sentencing decision under which the claimant is currently confined." Serio, 821 F.2d at 1117 (citing Fulford v. Klein, 529 F.2d 377, 381 (5th Cir. 1976), adhered

to en banc, 550 F.2d 342 (1977)). Plaintiff is challenging his sentence and his claim clearly falls within the strictures of this guideline.

However, habeas relief is unavailable to Plaintiff at this time. Although such relief is available to a person who is in custody "in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254, the right to pursue habeas relief in federal court is not unqualified. It is well settled that a petitioner seeking federal habeas corpus relief cannot collaterally attack his state court conviction or sentence in federal court until he has exhausted all available state remedies. See 28 U.S.C. § 2254(b)(1)(A); Rose v. Lundy, 455 U.S. 509 (1982); Minor v. Lucas, 697 F.2d 697 (5th Cir. 1983).

This requirement is not a jurisdictional bar, but a procedural one erected in the interest of comity to provide state courts first opportunity to pass upon and to correct alleged constitutional violations. See Picard v. Connor, 404 U.S. 270, 275 (1971); Rose v. Lundy, 455 U.S. 509 (1982). From the information provided in Plaintiff's complaint, he has not challenged his disciplinary sentence in the state court system. [Doc. 9, p. 10]. Therefore, Plaintiff is not entitled to habeas relief at this time because he has failed to exhaust his state court remedies.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this Court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C.

§ 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

IT IS RECOMMENDED that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the

proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under Section 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within **fourteen (14) days** from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 25 day of May 2011.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE